## Western Union Telegraph Company, Plff. in Err., *v.* Wilbert Richman.[†]

A telegraph message was incorrectly sent; the receiver, doubting its correctness, asked if there was not a mistake; the operator said he had asked back and received word that it was correct; the receiver did not ask to have the message repeated. *Held,* that there was no contributory negligence on the part of the receiver and that he could recover damages against the company, under the evidence.

(Argued January 24, 1887.   Decided February 7, 1887.)

[*]NOTE.—Where the liquidating partner takes the stock at dissolution, and carries on business for himself, he is chargeable with its value at that time. Hay's Appeal, 91 Pa. 265; Parker v. Broadbent, 134 Pa. 322, 19 Atl. 631. But if money made by the continuing partner be solely the result of his own labor after dissolution, no right to an accounting exists. Waring v. Cram, 1 Pars. Sel. Eq. Cas. 516.

[†]NOTE.—As to liability of telegraph company in sending message to office after hours of closing, see the full presentation of authorities in editorial note to Sweet v. Postal Telegraph-Cable Co. 53 L. R. A. 732.

July Term, 1886, No. 54, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Common Pleas No. 4 of Philadelphia County to review a judgment on a verdict for plaintiff in an action on the case. Affirmed.

The facts are stated in the following opinion of the court below, on a motion for a new trial, by ARNOLD, J.:

The plaintiff, a resident of Yorktown, New Jersey, is in the business of storekeeping, and buying, selling, and shipping poultry. In the month of October, 1884, he wrote to A. & M. Robbins, poultry dealers in the city of New York, inquiring what they would give for good young turkeys, and received this answer by telegraph:

Form No. 1,                                 West Jersey Railroad Com-
  Telegraph.                                  pany's Telegraph.
From New York.                                  10-15-1884.
                    For Wilbert Richman.
        Thirty-three cents for good young turkeys.
                                            A. & M. Robbins.

When the plaintiff received this message from the operator, he said to him: "Tom, that seems high; haven't you made a mistake?" The operator replied: "I thought it was high, too, and I asked back whether they meant thirty-three and they said yes."

The plaintiff thereupon went out into the adjacent country and bought 2,900 pounds of turkeys at twenty-five cents a pound. He shipped them to the Messrs. Robbins on October 17, 1884, billing them at thirty-three cents a pound. The buyers declined to pay that price, and sent on the pay at the rate of twenty-two cents a pound, which was the amount they agreed to pay. The cost of packing and shipping to New York was one cent a pound, so that the actual loss which the plaintiff sustained was four cents a pound, while his loss of prospective profits was seven cents a pound.

The message which the Messrs. Robbins sent was plainly written:

The Western Union Telegraph Company.

Send the following message subject to the terms printed on the back hereof, which are hereby agreed to. } October 15th, 1885.

To Wilbert Richman, Yorktown, N. J.

'Twenty-two cents for good young turkeys. '

A. & M. Robbins.

Read the Notice and Agreement on the Back of this Blank.

The terms were substantially that, to guard against mistakes, the sender of a message should order it to be repeated; that the company shall not be liable for mistakes in any unrepeated message, nor for mistakes in any repeated message beyond fifty times the sum received for sending the same, unless specially insured; and that no employee of the company is authorized to vary the foregoing.

The plaintiff also testified that he had used the same forms in sending telegrams, and that he had them in his store; that he knew that Tom, the operator, telegraphs to or terminates at Philadelphia, and supposed that he asked back there; that was what he, the plaintiff, understood the operator to mean, although he did not give it a thought as to what place the operator meant when he said that he had asked back. The plaintiff did not have the message repeated or make any effort to verify the dispatch, other than the inquiry above mentioned. It was admitted at the trial that the defendant, if liable at all, is liable as though the Yorktown office was on its own line and under its control and the operator in its employment.

The defendant offered no testimony; whereupon, the jury were told that the plaintiff was entitled to recover the difference between the amount he paid for the turkeys and cost of transportation to New York, twenty-six cents a pound, and what he received for the turkeys, twenty-two cents a pound, that is four cents a pound on 2,900 pounds; but that he was not entitled to recover for the loss of any prospective profits.

Where an action is brought for the loss sustained by acting upon a telegram, which, owing to the negligence of the agents of the telegraph company, was altered or in any respect un-

true, the action sounds in tort, and is for a loss wholly different from that which the sender sustained through the nonperformance of the contract. This point is settled by many decisions.

It will be sufficient to refer to the New York & W. Printing Teleg. Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338, and Harris v. Western U. Teleg. Co. 9 Phila. 88, for a decisive statement of the law of this state on this question. Both of these cases have been adopted by courts and text-book writers, to such an extent that they may well be relied upon in similar cases as decisive adjudications of the law in this respect. The action is not founded upon the contract, but upon the negligent act of the company in altering the message, thereby entailing a loss · upon the receiver.

The law is otherwise as to the receiver in England. Playford v. United Kingdom Electric Teleg. Co. L. R. 4 Q. B. 706.

It is said, however, that the plaintiff (by his former use of telegraph blanks and keeping them on hand) had notice of the regulation of the company, requiring messages to be repeated to secure accuracy and indemnity from loss. That point may be conceded, so far as the sender of the dispatch is concerned, and it was so ruled in Breese v. United States Teleg. Co. 48 N. Y. 132, 8 Am. Rep. 526, but I have not been able to find any ruling that the receiver of the dispatch is so affected.

Telegraph companies recognize this difficulty, and to avoid it usually deliver the message on a form which states that the company transmits and delivers messages only on conditions limiting its liability, which conditions have been assented to by the sender, and informing the receiver that the message is an unrepeated message, and that the company will not hold itself liable for errors or delays in unrepeated messages, etc. Otherwise, the receiver would not know whether the message had been repeated or not. There was no such notice on the form used in delivering the erroneous message to the plaintiff in this case.

In Ellis v. American Teleg. Co. 13 Allen, 226, it was held that the right of the receiver to sue the company must be treated as a right derivative through the sender, and that if the sender has no right to complain, because of his failure to order the message to be repeated, the receiver cannot sue.

In Aiken v. Western U. Teleg. Co. 5 S. C. N. S. 358, it was

held that an express stipulation in the contract binds the receiver as well as the sender; and this was followed in Western U. Teleg. Co. v. Neill, 57 Tex. 283, 44 Am. Rep. 589.

Of all these cases, it may be well to observe that, while the claims of the plaintiffs were laid in tort, yet they were treated and disposed of as if they were brought upon the contract; and that they are at variance with the decision of the supreme court of this state in New York & W. Printing Teleg. Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338.

In Sweatland v. Illinois & M. Teleg. Co. 27 Iowa, 433, 1 Am. Rep. 285, the action was brought by the receiver; but the sender was his agent; and consequently the contract with the agent bound the principal; and the same may be said of Neill's Case in Texas.

It is said, further, that the plaintiff knew that the dispatch was incorrect, or rather that he had suspicions of its correctness, which put him upon inquiry and so affected him with knowledge; and that the statement of the operator, that he had asked back and that the message was correct, did not relieve the plaintiff from the duty to order the message to be repeated, because the company's blanks contain a condition that no employee of the company is authorized to vary the terms of the agreement.

This contention would be of much weight if the action had been brought upon the contract, and the company was an insurer of the correctness of messages transmitted by it. Then, there being no consideration paid for the insurance or for repeating the message, the plaintiff would have no right to complain. The prime object of the agreement is to secure accuracy in transmitting the dispatch; the earning of a premium or pay for repeating the message is secondary. When the plaintiff asked the operator if the message was correct, and was told that he had already asked back and that they said yes, what use or necessity was there for the plaintiff to do the vain act of again repeating it? That would be re-repeating it, and the question naturally arises: When is repeating to stop? Had the operator said that the message was correct, without saying he had asked back, there might be some force in the argument of the defendant that the message had not been repeated, and that the operator could not waive the condition requiring its repetition.

That would have been a waiver of the condition; but saying that he had already asked back was not a waiver of it.

We are aware that the supreme court of Texas, in Neill's Case, 57 Tex. 283, 44 Am. Rep. 589, ruled that in an action *ex contractu* the failure to require the message to be repeated exonerated the company from liability, and that it was not a sufficient excuse for the plaintiff to show that he relied upon the declaration of the operator that he had already repeated the word (which was erroneous), and that it was sent as he delivered it. To permit this, the court said, would be to allow the hearsay statement of the operator to vary the terms of the contract made with the principal; and this, not only without consideration, but by retaining the consideration agreed upon for the guaranty against error. This, it will be remembered, was said in a case where the relation of principal and agent existed between the sender and receiver, and in an action *ex contractu.* How the operator could give anything but a hearsay statement we are not informed. We are unwilling to follow that reasoning in this case.

In an action against a telegraph company for the injury sustained through acting upon an altered message, the plaintiff establishes, prima facie, the negligence of the company, by proving the difference between the message which the company was employed to deliver and that which it did deliver to him. Gray, Communication by Telegraph, § 77, and cases cited.

That was shown in this case; and, no legal excuse or defense being offered by the company, the verdict for the plaintiff was right.

The court charged the jury that,—

"Under the evidence in this case the plaintiff is entitled to recover in this action, and the measure of his damages is four cents a pound on 2,900 pounds of turkeys."

The assignment of error specified this charge to the jury.

*John R. Read* and *Silas W. Pettit,* for plaintiff in error.— The plaintiff below having authorized Messrs. Robbins to telegraph him the price of turkeys in New York, they must be considered his agents in so doing; and he is therefore bound by the contract, indorsed on the message and agreed to by them. Passmore v. Western U. Teleg. Co. 78 Pa. 238–243; Sweatland v.

Illinois & M. Teleg. Co. 27 Iowa, 433; Hart v. Western U. Teleg. Co. 66 Cal. 579, 56 Am. Dec. 119, 6 Pac. 637; Redpath v. Western U. Teleg. Co. 112 Mass. 71, 17 Am. Rep. 69; Camp v. Western U. Teleg Co. 1 Met. (Ky.) 164; Ellis v. American Teleg. Co. 13 Allen, 226; Breese v. United States Teleg. Co. 48 N. Y. 132, 8 Am. Rep. 526; Western U. Teleg. Co. v. Neill, 57 Tex. 283, 44 Am. Rep. 589.

The relation to the telegraph company was a derivative one, depending upon the contract between the sender of the message and the company. Ellis v. American Teleg. Co. 13 Allen, 226–238; Aiken v. Western U. Teleg. Co. 5 S. C. N. S. 358–371; Sweatland v. Illinois & M. Teleg. Co. 27 Iowa, 433, 1 Am. Rep. 285.

The case of New York & W. Printing Teleg. Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338, which will be cited as deciding otherwise, is, as to this, contrary to well-considered decisions in other states, although well decided, and since followed elsewhere upon the real point involved. The liability in that case arose from the action of the company's employee in altering the message.

In delivering the message in this case the telegraph company assumed only to deliver the message of Messrs. Robbins, and for any error of the company in such delivery Messrs. Robbins were responsible, exactly as they would have been had their clerks or buyers or salesmen made the mistake. Rose v. United States Teleg. Co. 3 Abb. Pr. N. S. 408; Western U. Teleg. Co. v. Shotter, 71 Ga. 760; New York & W. Printing Teleg. Co. v. Dryburg, 35 Pa. 298–302, 78 Am. Dec. 338.

The effect of the rule in this case is manifest, for although Messrs. Robbins were liable to the plaintiff, the telegraph company was not liable to Messrs. Robbins by reason of the stipulations under which it undertook the employment.

The plaintiff was guilty of contributory negligence in not requiring the message to be repeated, particularly as he knew the rule of the company and he suspected the message was wrong. Wabash, St. L. & P. R. Co. v. Jaggerman, 115 Ill. 407, 4 N. E. 641; Gray, Communication by Telegraph, § 76; Western U. Teleg. Co. v. Neill, 57 Tex. 283, 44 Am. Rep. 589; Hart v. Direct United States Cable Co. 86 N. Y. 633.

*John Sparhawk, Jr.,* and *N. DuBois Miller,* for defendant in

error.—Agency cannot arise merely by reason of the fact that two people in entirely independent positions, dealing with each other at arm's length, employ the public telegraph system as a means of communication, even although this is done by mutual understanding.

By reason of the delivery of a false telegram to the defendant in error the company is guilty of a tort, for the effect of which it is answerable. The law of Pennsylvania upon this point is beyond controversy. New York & W. Printing Teleg. Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338, the leading American case; Bigelow on Torts, 624; Harris v. Western U. Teleg. Co. 9 Phila. 88.

Wabash, St. L. & P. R. Co. v. Jaggerman, 115 Ill. 407, 4 N. E. 641, has no bearing upon the question upon which it is cited.

In Western U. Teleg. Co. v. Neill, 57 Tex. 283, 44 Am. Rep. 589, the false telegram upon which the plaintiff acted was sent by his agent, acting ostensibly as his agent, and so declared to be by the plaintiff himself.

The same facts existed in Sweatland v. Illinois & M. Teleg. Co. 27 Iowa, 433, 1 Am. Rep. 285; the sender of the message was avowedly the agent of the plaintiff, the receiver. And, as the court below observes with regard to Neill's Case and the two cases from South Carolina and Massachusetts, the right of action in all of them was treated as though having arisen under the contract. In Hart v. Direct United States Cable Co. 86 N. Y. 633, a mistake occurred in transmission, which rendered the telegram as delivered, in the language of the report, "an unintelligible jargon," and the party was clearly guilty of contributory negligence, in endeavoring to act upon it.

In Ellis v. American Teleg. Co. and Aiken v. Western U. Teleg. Co. the cases were treated upon the theory that the right of the receiver rested only upon the contract, and upon that theory it was rightly decided; but in this state, at least, no doubt can exist that the receiver's right of action is based, not alone upon the contract, but also upon the tort.

The proposition that the defendant is liable, if at all, only in case the message is repeated as contained in the printed conditions, can be invoked only against the sender of the message, if against any; for it is his message, his language that is to be transmitted, and it is only known to the receiver when deliv-

ered, and as delivered. He is to be guided or informed by what is delivered to him, and he has no opportunity to agree upon any such condition before delivery. De La Grange v. Southwestern Teleg. Co. 25 La. Ann. 383. See also De Rutte v. New York, A. & B. Electric Magnetic Teleg. Co. 1 Daly, 547.

PER CURIAM:

The uncontroverted evidence shows that the company was guilty of negligence, and the person receiving the dispatch did all that could reasonably be required of a prudent man. The notice on the back of the blank was to the person who sent the message, not to the one who received it.

Judgment affirmed.